# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSARIO RAMIREZ, | Case No. 1:20-cv-00363-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| KILOLO KIJAKAZI[1], Acting Commissioner of Social Security, | |
| Defendant. | (Doc. 1) |

## I. INTRODUCTION

On March 9, 2020, Plaintiff Rosario Ramirez ("Plaintiff") filed a complaint under 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

///

---

[1] On July 9, 2021, Kilolo Kijakazi was named Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html. She is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7, 9.)

## II.   BACKGROUND

On November 14, 2016, Plaintiff protectively filed applications for DIB and SSI payments, alleging she became disabled on November 8, 2015, due to fibromyalgia, irritable bowel syndrome, anxiety, obsessive compulsive disorder, depression, "ringing in ears," chronic pain, forgetfulness, "nerve surges" on right side of body, lack of concentration, "unbalanced," blurry vision, vertigo, nausea, sensitivity to light, fatigue, and muscle spasms. (Administrative Record ("AR") 236, 248, 277.) Plaintiff was born on August 4, 1967 and was forty-eight years old as of the alleged onset date. (AR 273.) Plaintiff obtained a GED in 2001, has past work experience as a cashier and hospital "processing tech," and can communicate in English. (AR 276, 278.)

### A.   Relevant Medical Evidence[3]

#### 1.   Angela Grasser, M.D.

On February 24, 2016, Plaintiff established care with Dr. Grasser, a primary care physician. (AR 524.) Plaintiff reported that she had fibromyalgia and irritable bowel syndrome for the past seven years. (AR 524.) Upon examination, Plaintiff was found to have no joint deformity but erythema and tenderness in her back, shoulders, and legs. (AR 524.)

On March 23, 2016, at a follow-up appointment, Plaintiff reported feeling "ok" with her fibromyalgia. (AR 488.) Treatment notes recorded no joint deformity, erythema, or tenderness. (*Id.*) Plaintiff had full range of motion in all joints and normal gait. (*Id.*) Dr. Grasser noted that Plaintiff's fibromyalgia was stable and directed Plaintiff to continue supportive care. (AR 489.)

On April 5, 2016, Plaintiff presented to Dr. Grasser for pain in her lower left back. (AR 492.) Plaintiff reported feeling "okay" with her fibromyalgia. (*Id.*) Dr. Grasser found that Plaintiff had erythema and an extremely tender lower back, including on the lower left side, but no joint deformity. (*Id.*) Treatment notes indicated that Plaintiff's fibromyalgia was stable and that Plaintiff should continue taking Tylenol. (AR 493.)

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

On May 23, 2016, Plaintiff reported that she was "doing good" with her fibromyalgia. (AR 501.) Upon examination, Dr. Grasser found no joint deformity, but erythema, tenderness in Plaintiff's neck, and numbness in the right half of her head. (*Id.*) Dr. Grasser recorded that Plaintiff's fibromyalgia was stable and Plaintiff should continue with pain medication and supportive care. (AR 502.)

On October 24, 2016, Plaintiff complained of breast pain, chest pain, fatigue, depression, and fibromyalgia. (AR 631.) Dr. Grasser noted tenderness in Plaintiff's back and legs and found that Plaintiff had a normal range of motion, strength, and motor function. (AR 632–33.) Plaintiff was also alert and oriented. (AR 633.) Dr. Grasser directed Plaintiff to continue with vitamins and supportive care. (AR 634.)

On November 29, 2016, Plaintiff presented for a follow-up appointment. (AR 629.) Dr. Grasser examined Plaintiff and noted no joint deformity, but erythema and tenderness in Plaintiff's back and neck. (*Id.*) Plaintiff had normal motor and sensory function. (*Id.*) Dr. Grasser noted that Plaintiff's fibromyalgia was stable, and Plaintiff should continue with pain medications. (AR 630.)

On January 3, 2017, Plaintiff complained of headaches and fibromyalgia. (AR 623.) Plaintiff also needed paperwork for her welfare-to-work program filled out. (*Id.*) Dr. Grasser found that Plaintiff was alert and oriented and had a normal range of motion, strength, and motor function. (AR 624.) Dr. Grasser also found tenderness in Plaintiff's back and legs. (*Id.*) Treatment notes indicated that Plaintiff's fibromyalgia was stable, and Plaintiff was ordered to continue with supportive care and gabapentin. (AR 625–26.) On January 31, 2017, Plaintiff again complained of headaches and fibromyalgia. (AR 618.) Dr. Grasser made similar findings upon examination, and Plaintiff was directed to continue with vitamins and supportive care. (AR 621.)

On March 20, 2017, Plaintiff presented for a follow-up appointment. (AR 610.) Upon examination, Plaintiff had a normal range of motion, strength, and motor function, and tenderness in her back and legs. (AR 611.) Plaintiff was alert and oriented. (*Id.*)

On April 17, 2017, Plaintiff complained of anxiety, depression, and worsening pain in her neck, arms, and legs. (AR 856.) Dr. Grasser examined Plaintiff and found tenderness in her back and legs. (AR 858.) Plaintiff was alert and oriented and had normal motor function. (*Id.*) Dr.

Grasser ordered Plaintiff to continue supportive care. (AR 859.) On May 23, 2017, and June 19, 2017, Plaintiff returned to Dr. Grasser with the same complaints. (AR 848, 852.) Dr. Grasser made similar physical findings upon examination and noted that Plaintiff's fibromyalgia was stable and that Plaintiff should continue with her current management. (AR 851, 855.)

Dr. Grasser also completed a medical source statement on Plaintiff's behalf on April 17, 2017. (AR 779–82.) Dr. Grasser diagnosed Plaintiff with fibromyalgia, anxiety, depression, and arthritis in her back. (AR 779.) Plaintiff's symptoms included fatigue, depression, headaches, and pain in her back, neck, legs, and chest. (*Id.*) Dr. Grasser opined that Plaintiff's impairments limited Plaintiff to: walking a quarter of a block without rest or severe pain; sitting and standing for no more than 15 minutes at a time; sitting and standing/walking for less than two hours in an eight-hour workday; never lifting/carrying more than 10 pounds; rarely lifting/carrying less than 10 pounds; never twisting, stooping, crouching/squatting, or climbing stairs and ladders; and grasping, engaging in fine manipulations, and reaching for only 10 percent of an eight-hour workday. (AR 779–81.) According to Dr. Grasser, Plaintiff would need to take a ten-minute break every hour to stretch. (AR 782.) Dr. Grasser further opined that Plaintiff was capable of low stress work due to her anxiety and likely to be off task for 25 percent or more of a typical workday. (AR 781.) Plaintiff was also likely to be absent from work for more than four days per month due to her impairments. (*Id.*)

On July 19, 2017, at a follow-up appointment, Plaintiff reported that she had anxiety, depression, tiredness, and fatigue. (AR 842.) Upon examination, Dr. Grasser found that Plaintiff had tenderness in her back and legs. (AR 843.) Plaintiff was alert and oriented and had normal motor function. (*Id.*) Dr. Grasser noted that Plaintiff's fibromyalgia was stable, and Plaintiff should continue her pain medication. (AR 845.) Treatment notes from August 29, 2017, October 3, 2017, November 8, 2017, December 12, 2017, and January 15, 2018, recorded similar findings. (AR 822–23, 825, 827, 831, 832, 834, 836, 839–840.)

On January 30, 2018, Plaintiff had a follow-up appointment regarding her disability benefits application. (AR 816.) Physical findings were unchanged from prior examinations. (AR 818.) Treatment notes recorded that Plaintiff's fibromyalgia was stable and for Plaintiff to continue with pain medication. (AR 819.)

On February 17, 2018, Plaintiff complained of coughing and fever. (AR 814.) She reported that her fibromyalgia had been "ok." (*Id.*) Dr. Grasser found that Plaintiff had normal gait and no joint deformity. (*Id.*)

On March 14, 2018, Plaintiff complained of fibromyalgia with pain in her back and body. (AR 812.) Dr. Grasser noted that that Plaintiff had tenderness in her back, shoulders, arms, and legs. (*Id.*) Plaintiff was ordered to continue with vitamins and ibuprofen for her pain. (AR 813.)

On April 27, 2018, at a follow-up appointment, Plaintiff reported that her fibromyalgia and anxiety "has been better." (AR 810.) Dr. Grasser noted that Plaintiff had tenderness in her shoulder and legs, but no other musculoskeletal abnormalities. (*Id.*) Dr. Grasser also noted that Plaintiff's fibromyalgia was stable and for Plaintiff to continue supportive care. (AR 811.) On June 23, 2018, Dr. Grasser made similar findings. (AR 805–06.)

On June 23, 2018, Plaintiff presented to Dr. Grasser, complaining of a vitamin B-12 deficiency. (AR 803.) Upon examination, Dr. Grasser found Plaintiff to be alert, oriented, and in no acute distress. (AR 805.) Other than "tender back and legs," Dr. Grasser did not observe any other musculoskeletal abnormalities. (*Id.*) Dr. Grasser noted that Plaintiff's fibromyalgia was "stable" and for Plaintiff to continue with vitamins and ibuprofen. (AR 806.)

On August 7, 2018, Plaintiff complained of neck pain and pain radiating down her legs, in additional to numbness in her foot. (AR 881.) Upon examination, Dr. Grasser noted tenderness in Plaintiff's neck and back, and radiating down Plaintiff's legs. (AR 884.) Plaintiff was directed to continue with supportive care for her neck pain and to take gabapentin and ibuprofen for her fibromyalgia and back pain. (*Id.*)

On August 29, 2018, Plaintiff reported that she was able to get turmeric and was feeling better with her "pain syndrome." (AR 895.) Dr. Grasser noted Plaintiff had tenderness in her back and neck, Plaintiff's fibromyalgia was stable, and she should continue with turmeric. (AR 897–98.)

On October 28, 2018, Plaintiff presented for a follow-up appointment for her fibromyalgia and depression. (AR 919.) Dr. Grasser found that Plaintiff had tenderness in her shoulders, arms, and legs. (AR 921.) Treatment notes indicated that Plaintiff's fibromyalgia was "slowly improving" and that Plaintiff should continue with turmeric and vitamin supplementation. (AR 922.)

### 2. John Nelson, M.D.

On November 17, 2016, Plaintiff presented to Dr. Nelson for chest pain on the referral of Dr. Grasser. (AR 723.) Plaintiff complained of a sharp, burning chest pain that radiated down her left arm. (*Id.*) Upon examination, Dr. Nelson found that Plaintiff had a full range of motion in her extremities and no swelling, clubbing, cyanosis, or edema. (AR 725.) At a follow-up appointment on December 7, 2016, Dr. Nelson made identical findings. (AR 721.)

### 3. State Agency Physicians

On January 27, 2017, C. Bullard, M.D., a state agency physician, reviewed the record and assessed Plaintiff's physical residual functional capacity ("RFC")[4]. (AR 105–06.) Dr. Bullard found that Plaintiff could: lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about six hours in an eight-hour workday; sit for more than six hours in an eight-hour workday; and perform unlimited pushing/pulling with the upper and lower extremities, subject to the lift and carry restrictions. (AR 105.) Dr. Bullard found that Plaintiff had no other limitations. (AR 105–06.) Upon reconsideration on June 2, 2017, another state agency physician, E. Wong, M.D., reviewed the record and affirmed Dr. Bullard's findings. (AR 125–26.)

### 4. Chitra Kandaswamy, M.D.

On August 20, 2018, Plaintiff presented to Dr. Kandaswamy, a pulmonologist, for asthma. (AR 784.) Treatment notes document that Plaintiff was able to ambulate to the examination room without assistance and sit comfortably on the examination table without difficulty or evidence of any pain. (AR 785.) Dr. Kandaswamy examined Plaintiff and found no evidence of bony tenderness, joint effusion, enlargement, abnormal motion, muscle weakness, or reduced range of motion. (AR 786.)

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.' " *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

### B. Administrative Proceedings

The Commissioner initially denied Plaintiff's applications for SSI and DIB benefits on March 20, 2017, and again on reconsideration on June 14, 2017. (AR 151, 159.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 165.) At the hearing on March 21, 2019, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 39–64.)

Plaintiff testified that her fibromyalgia affects "everything," including her neck, legs, back and arms. (AR 46.) Her arms feel like they are "100 pounds each and they burn." (*Id.*) Plaintiff takes turmeric in addition to prescription medication for her condition. (AR 47–48.) In addition, Plaintiff stretches a lot, uses hot "rice socks," and takes hot baths. (AR 50.) She cannot get out of bed in the morning if she does not stretch. (*Id.*) Plaintiff estimated that, over the course of a day, she spends five to seven hours lying down. (AR 51.)

According to Plaintiff, the longest she can do an activity for is about 20 minutes before she needs to take a break, sometimes for 30 minutes, before resuming the activity. (AR 52.) She can bend over at the waist and kneel, but with some pain. (*Id.*) Plaintiff cannot squat or climb up stairs because of pain, but she has no difficulty walking on uneven surfaces, like grass. (AR 53–54.) She can reach overhead and in front of herself at shoulder height, with pain sometimes. (AR 54.) Sunny weather makes her skin feels like its burning, and cold weather makes her body hurt. (AR 55.)

Plaintiff testified that she goes grocery shopping and prepares meals for herself and her ten-year-old son. (AR 44–45, 49.) Representative meals included pancakes, waffles, eggs, potatoes, and overnight oatmeal. (AR 45.) If Plaintiff is "feeling good," she can make tacos, burritos, and salads. (*Id.*) Plaintiff stated that she is able to complete all of her household chores, but "[i]t takes [her] . . . . longer than what [she] would like." (*Id.*) For example, she used to be able to complete her chores in one day, but now it takes her "all week." (*Id.*) Plaintiff testified that she does not have a washing machine in her home, so she has to carry her laundry to the laundromat, which takes a lot more energy. (AR 46.) She can do only one load of laundry at a time. (AR 46.)

According to Plaintiff, on a good day, she can get up, take a shower, and get dressed before she needs to lay down for 10 to 15 minutes. (AR 56–57.) After her rest, Plaintiff makes breakfast

7

and does the dishes–the latter takes about 15 minutes. (AR 57.) Plaintiff then cleans up after her son for approximately one to three hours, taking a 15 to 30 minute break after every 30 minutes of work. (AR 58.) Plaintiff usually lies down to rest while her son is doing homework. (*Id.*) Plaintiff has approximately three or four good days a week. (AR 58–59.) On a bad day, which usually occurs after grocery shopping, Plaintiff has a hard time getting up in the morning. (AR 59.) After driving her son to school, she gets back into bed and stays there for most of the day. (*Id.*) On bad days, she does not take a shower until the evening. (*Id.*)

Plaintiff testified that, in 2017, she participated in a "welfare to work program" for approximately six months. (AR 63.) Her work included checking customers "in to the kiosk machine" in a lobby for three hours a day, five days a week. (*Id.*)

**C.   The ALJ's Decision**

In a decision dated April 4, 2019, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 15–29.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 17–29.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 8, 2015, the alleged onset date (step one). (AR 17.) At step two, the ALJ found Plaintiff's following impairments to be severe: fibromyalgia; obesity; "mental impairments variously diagnosed to include major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder (PTSD)"; sleep apnea; cervical desiccation; endplate spurs; and lumbar desiccation with Bertolotti's syndrome. (*Id.*) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 19.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC

> to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except [Plaintiff] should no more than occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. [Plaintiff] should no more than occasionally

8

> stoop, kneel, crouch and crawl. [Plaintiff] is limited to noncomplex, routine tasks. [Plaintiff] is limited to occasional exposure to fumes, odors, gases and other respiratory irritants. [Plaintiff] cannot work in an environment with extreme heat and cold. [Plaintiff] is limited to occasional public contact of a superficial nature, and occasional interaction with coworkers with no teamwork-related tasks.

(AR 21.)[5] Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" she rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 23.)

The ALJ determined that, given her RFC, Plaintiff was not able to perform her past relevant work, identified as a composite position comprised of a central supply worker and administrative clerk (step four). (AR 27.) The ALJ ultimately concluded that Plaintiff was not disabled because Plaintiff could perform a significant number of other jobs in the national economy, specifically laundry sorter, sewing machine operator, and garment bagger (step five). (AR 28.)

On April 24, 2019, Plaintiff sought review of the ALJ's decision before the Appeals Council, which the Appeals Council denied on January 3, 2020. (AR 1, 7.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

### III.    LEGAL STANDARD

**A.    Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180

---

[5] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R. § 416.967(b). Although the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. *Id.*

F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also* 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [his] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed

only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Circ. 2008) (quoting *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.     DISCUSSION

Plaintiff contends that the ALJ erred in discounting both Dr. Grasser's opinion and Plaintiff's testimony regarding her subjective complaints. (Doc. 16 at 29–39.) For the reasons set forth below, the Court determines that the ALJ did not err.

## A.     The ALJ Properly Evaluated Dr. Grasser's Opinion

### 1.     Legal Standard

The ALJ must consider and evaluate every medical opinion of record. *See* 20 C.F.R. § 404.1527(b) and (c) (applying to claims filed before March 27, 2017); *Mora v. Berryhill*, No. 1:16–cv–01279–SKO, 2018 WL 636923, at *10 (E.D. Cal. Jan. 31, 2018). In doing so, the ALJ "cannot reject [medical] evidence for no reason or the wrong reason." *Id.*

Cases in this circuit distinguish between three types of medical opinions: (1) those given by a physician who treated the claimant (treating physician); (2) those given by a physician who examined but did not treat the claimant (examining physician); and (3) those given by a physician who neither examined nor treated the claimant (non-examining physician). *Fatheree v. Colvin*, No. 1:13–cv–01577–SKO, 2015 WL 1201669, at *13 (E.D. Cal. Mar. 16, 2015). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)). The opinions of treating physicians "are given greater weight than the opinions of other physicians" because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).

"To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions." *Cooper v. Astrue*, No. CIV S–08–1859 KJM, 2010 WL 1286729, at *2 (E.D. Cal. Mar. 29, 2010). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830–31. "The ALJ can meet this burden by setting out a detailed and

thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes*, 881 F.2d at 751). The opinion of a non-examining physician (such as a state agency physician) may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund*, 253 F.3d at 1157,[6] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751.

**2. Analysis**

Plaintiff alleges—and the record reflects—that Dr. Grasser was Plaintiff's treating physician. (*See, e.g.*, AR 342, 487–524.) Dr. Grasser's treatment notes in the record indicate that she treated Plaintiff regularly between February 2016 and October 2018. (*See, e.g.*, AR 484–508, 610–34, 803–64, 919–22.) In a medical source statement submitted on Plaintiff's behalf on April 17, 2017, Dr. Grasser opined to extreme limitations on Plaintiff's ability to work, including that Plaintiff could never lift more than 10 pounds and rarely lift anything less, due in part to Plaintiff's fibromyalgia. (AR 779–82.)

In assigning "little weight" to Dr. Grasser's opinion, the ALJ stated:

> While I note that [Dr. Grasser] has a long treatment history with [Plaintiff], her objective findings, as well as other providers' objective findings simply do not support her very restrictive opinion . . . . [I]n nearly all her physical examinations Dr. G[r]asser documented that [Plaintiff] had intact muscle strength though usually with tenderness in her back and legs, she had intact sensations and motor abilities . . . . Other providers have similarly documented that she walked with a normal gait, she had full strength in upper and lower extremities, and she had intact sensations and reflexes. Such near-normal clinical findings are simply inconsistent with her very

---

[6] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

restrictive opinion.

(AR 22) (internal citations omitted).

In sum, the ALJ discounted Dr. Grasser's opinion because it was unsupported by the medical evidence, including Dr. Grasser's own treatment notes. Although not specifically identified by the ALJ as a basis for its rejection, Dr. Grasser's opinion is also contradicted by the opinions of the state agency physicians, who opined that Plaintiff was limited to light work. (AR 105–06, 125–26.) Thus, the ALJ was required to set forth "specific and legitimate reasons," supported by substantial evidence, for rejecting Dr. Grasser's opinion. *Trevizo*, 871 F.3d at 675.

An ALJ may properly discount a treating physician's opinion that is unsupported by the medical record, including her own treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (a treating physician's opinion is properly rejected where the physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"). Plaintiff contends that the ALJ misunderstood fibromyalgia by relying on examination findings to disagree with Dr. Grasser's opinion. (Doc. 16 at 36–39.) The Ninth Circuit has recognized the "unusual" nature of fibromyalgia. *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017). Typical symptoms of fibromyalgia include chronic pain, tender points throughout the body, fatigue, stiffness, and sleep disruption. *Id.* Individuals with fibromyalgia, however, often have normal muscle strength, sensory functions, and reflexes: "Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling. Indeed, [t]here is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain. The condition is diagnosed entirely on the basis of the patients' reports of pain and other symptoms. [T]here are no laboratory tests to confirm the diagnosis." *Id.* (citations and internal quotation marks omitted). Hence, where a claimant has fibromyalgia, the ALJ should consider the longitudinal record when determining the RFC. *Id.* (citing SSR 12-2p).

Here, the ALJ considered all of the medical evidence, including Dr. Grasser's treatment notes in the record, spanning from February 2016 to October 2018, and found that the clinical findings showed "mostly mild abnormalities with functional abilities largely intact," while also noting tenderness in Plaintiff's neck, back, and legs. (AR 23.) For example, Dr. Grasser's notes

indicated that Plaintiff had a normal range of motion and strength, with tenderness in her back and legs, in October 2016, January 2017, February 2017, and March 2017. (*See* AR 611, 616, 620, 624, 632.) Plaintiff had tender back and legs but was alert and oriented with normal motor function in March 2017 through August 2017 and October 2017 through January 2018. (AR 611, 818, 822, 827, 831, 836, 843, 849, 854, 858.) In April 2018 and June 2018, Dr. Grasser noted that Plaintiff had tender shoulders, back, and legs, but no other musculoskeletal abnormalities. (AR 805, 810.) Indeed, at appointments in 2016 through 2018, Dr. Grasser consistently noted that Plaintiff's fibromyalgia was "stable." (*See, e.g.*, AR 489 (March 2016), 493 (April 2016), 502 (May 2016), 630 (November 2016), 625 (January 2017), 855 (May 2017), 851 (June 2017), 845 (July 2017), 836 (October 2017), 832 (November 2017), 819 & 823 (January 2018), 811 (April 2018), 806 (June 2018).) Furthermore, in October 2018, Dr. Grasser noted that Plaintiff's fibromyalgia was "slowly improving." (*See* AR 922; *see also* AR 810, 895.)

As the ALJ observed, other medical providers similarly documented generally normal findings, with reports of pain. (*See* AR 25.) For example, in November and December 2016, Dr. Nelson, who Plaintiff saw for chest pain, noted that Plaintiff reported musculoskeletal pain. (AR 720, 724.) Upon examination, he found that Plaintiff was alert and oriented, had normal motor strength and gait, and a full range of motion. (AR 721, 725.) In May 2018, Plaintiff's pulmonologist, Dr. Kandaswamy documented that Plaintiff was able to ambulate to the examination room without assistance and sit comfortably on the examination table without difficulty or evidence of any pain. (AR 785.) Dr. Kandaswamy also noted no evidence of bony tenderness, joint effusion, enlargement, abnormal motion, muscle weakness, or reduced range of motion. (AR 786.)

The Court finds that the ALJ reasonably concluded that Dr. Grasser's treatment notes, and the medical evidence in general, provided support for some limitations—as reflected in the ALJ's RFC determination limiting Plaintiff to light work—but not the extreme limitations in Dr. Grasser's opinion. *See Connett*, 340 F.3d at 875. In reaching this conclusion, the ALJ considered the longitudinal record, "rather than singling out any individual periods of waning symptoms," as the Ninth Circuit cautioned against in *Revels. Vickie M. v. Commr of Soc. Sec.*, No. 2:21–CV–00540–BAT, 2021 WL 5866915, at *4 (W.D. Wash. Dec. 10, 2021) ("This consideration of the longitudinal

objective evidence does not run afoul of *Revels*."). Therefore, the ALJ did not err in discounting Dr. Grasser's opinion as unsupported by the objective medical evidence. *See, e.g.*, *Garcia v. Comm'r of Soc. Sec.*, Case No. 1:20–cv–00373–SAB, 2021 WL 1961737 (E.D. Cal. May 17, 2021) (affirming the ALJ's rejection of a treating source opinion finding disabling limitations from fibromyalgia where examination notes showed normal findings including normal gait); *Villafan v. Comm'r of Soc. Sec.*, Case No. 1:17–cv–01229–SAB, 2018 WL 2734914 (E.D. Cal. June 4, 2018) (affirming the ALJ's rejection of a treating source opinion of disabling limitations from fibromyalgia based on normal physical examination findings such as full range of motion and good response to treatment).

### B.     The ALJ Properly Evaluated Plaintiff's Testimony

#### 1.     Legal Standard

In evaluating the credibility of a claimant's testimony regarding their impairments, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* The claimant is not required to show that their impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties

concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not sufficient to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834)).

### 2. Analysis

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]"  (AR 23.)  The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*)  Since the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.  Here, the ALJ properly discounted Plaintiff's testimony because it conflicted with the objective medical evidence of record and her activities. (AR 26.)

#### a. Objective Evidence of Record

"[T]he Ninth Circuit has repeatedly emphasized that, 'in evaluating the credibility of . . . testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of [the impairment].'" *Ondracek v. Comm'r of Soc. Sec.*, No. 1:15–cv–01308–SKO, 2017 WL 714374, at *8 (E.D. Cal. Feb. 22, 2017) (quoting *Burch*, 400 F.3d at 680); *see, e.g.*, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (a claimant's testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence). Nonetheless, "lack of medical evidence . . . is a factor that the ALJ can consider

in h[er] credibility analysis." *Burch*, 400 F.3d at 681.

As the ALJ summarized, Plaintiff testified that "[d]ue to her pain and fatigue, . . . [Plaintiff] spends 5 to 7 hours per day laying down, though these rest breaks are broken up throughout the day. [Plaintiff] does activities in 10 to 20 minute increments and then has to take a 30-minute break, consisting of laying down, stretching and/or using a heated rice sock." (AR 22.) The ALJ discounted Plaintiff's testimony regarding her "severe symptoms and limitations primarily caused by her fibromyalgia, degenerative disc disease[,] and depression" in part because Plaintiff's complaints were inconsistent with the medical evidence. (AR 22, 23–25, 26.) The ALJ provided sufficient support for this conclusion. (*See* AR 23–25.) As discussed above, while they noted pain or tenderness, Dr. Grasser and Plaintiff's other providers consistently found that Plaintiff had normal strength, range of motion, and motor function. (*See, e.g.*, AR 611, 616, 620, 624, 632, 721, 725, 786.) It was reasonable for the ALJ to conclude, again, based on a review of the longitudinal evidence, that these generally unremarkable physical findings did not support Plaintiff's testimony about the severity of her condition and limitations. Thus, the Court finds that the ALJ properly considered inconsistency with the objective evidence as one of several "clear and convincing" reasons to discount Plaintiff's credibility. *See Salas v. Colvin*, No. 1:13–cv–00429–BAM, 2014 WL 4186555, at *6 (E.D. Cal. Aug. 21, 2014).

### b. Plaintiff's Activity Level

It is appropriate for an ALJ to consider a claimant's activities that undermine claims of severe limitations in making the credibility determination. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *Rollins*, 261 F.3d at 857; *see also Thomas*, 278 F.3d at 958–59 (an ALJ may support a determination that the claimant was not entirely credible by identifying inconsistencies between the claimant's complaints and the claimant's activities.). It is well-established that a claimant need not "vegetate in a dark room" to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). However, if a claimant can spend a substantial part of their day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disability. *Fair*, 885 F.2d at 603. "Even

where [Plaintiff's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Plaintiff alleges an inability to work due in part to fibromyalgia and other conditions, which she alleges cause her to experience pain and anxiety. (AR 46–47, 49.) According to Plaintiff, she can only do an activity for about 10 to 20 minutes before she needs to take a 30 minute break. (AR 52.) In evaluating Plaintiff's credibility, however, the ALJ cited activities that were inconsistent with Plaintiff's testimony about the severity of her symptoms and impairments. The ALJ observed that, despite Plaintiff's alleged severe limitations due to her pain and other symptoms, Plaintiff returned to work in a part-time capacity for a return-to-work training program for approximately six months in 2017. (AR 26, 63.) During that time, Plaintiff worked for three hours a day, five days a week. (AR 63.) In addition, as the ALJ noted and the record reflects, Plaintiff prepares meals for herself and her son, completes all of her household chores—albeit at a slower pace than she used to—drives, and goes grocery shopping. (AR 44-46, 49.)

The Court finds that Plaintiff's activities were reasonably considered by the ALJ to be inconsistent with her alleged inability to work due to her pain and other symptoms. (AR 26.) Even if some of these activities do not rise to the level of transferable work skills, they are, as a whole, inconsistent with allegations of completely debilitating impairment. *Molina*, 674 F.3d at 1113. Accordingly, the inconsistencies between Plaintiff's activity level and her complaints constituted a clear and convincing reason to find Plaintiff's testimony not credible. *See* 20 C.F.R. § 416.929(c)(3); *Stubbs-Danielson*, 539 F.3d at 1175.

## V.   CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in

favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Rosario Ramirez.

IT IS SO ORDERED.

Dated:     **January 26, 2022**                         /s/ *Sheila K. Oberto*
                                                                            UNITED STATES MAGISTRATE JUDGE